## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EVANS WYNN-TURNER, | : | Civil No. 1:21-CV-01945 |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | |
| | : | |
| THOMAS MCGINLEY, *et al.*, | : | |
| | : | |
| Respondents. | : | Judge Jennifer P. Wilson |

## MEMORANDUM

Before the court is a petition for habeas corpus pursuant to 28 U.S.C. § 2254 filed by Evans Wynn-Turner ("Petitioner").  (Doc. 1.)  The court finds that the Superior Court's treatment of Petitioner's ineffective assistance of counsel claims and sufficiency of the evidence claims was not unreasonable under federal law and the remaining claim was unexhausted.  Therefore, the court will dismiss the Section 2254 petition and close the case.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The factual background of this case was summarized by the Post Conviction Relief Act ("PCRA") court and reproduced here:

> The record reveals that at approximately 11:00 p.m., on April 27, 2015, York Police Officers responded to a 911 call concerning a man with a weapon at 319 East King Street.  When officers arrived at the residence, they were permitted entry and spoke to Ms. Lakiesha Liggins.  Ms. Liggins provided a written statement informing the officers that she called the police because she had ended her relationship with [Petitioner], and when she told him that he needed to vacate the premises, [Petitioner] brandished a gun and threatened to kill her.[2]

Police then searched the home.  Officer Paul Thorne testified that when he looked out of a window on the third floor, he saw a lunch box on the roof of a neighboring house.  Officer Thorne requested a ladder from the fire department, and with the ladder in place, he climbed to the roof and retrieved the lunch box.  Inside the lunch box, Officer Thorne discovered a loaded handgun.  Ms. Liggins testified at [a] *habeas corpus* hearing that the lunch box belonged to her son and the gun found inside was the gun that was kept at her house.

[2]It does not appear that this written statement was ever admitted into evidence.  Rather, Ms. Liggins's April 27, 2015 statement was used for impeachment purposes as a prior inconsistent statement, and Ms. Liggins testified that she had written the statement and signed it.

Officer Matthew Tunnal testified that he located [Petitioner] on the third floor of the house.  [Petitioner] was calm until Officer Sean Haggarty informed him that the firearm had been recovered.  [Petitioner] then began sweating profusely.  The officers arrested [Petitioner] and charged him with receiving stolen property, simple assault, terroristic threats, and persons not to possess firearms.[3]

[3]18 Pa.C.S. § 3925(a), 18 Pa.C.S. § 2701(a)(3), 18 Pa.C.S. § 2706(a)(1), and 18 Pa.C.S. § 6105(a)(1), respectively.

Despite the 911 call and the written statement she gave to police, Ms. Liggins later disavowed her claim that [Petitioner] brandished a firearm, and at trial, Ms. Liggins refused to testify.  In light of Ms. Liggins's recantation, the Commonwealth sought to have her testimony from [Petitioner]'s preliminary hearing and *habeas corpus* hearing admitted under Pa.R.E. 804(a)(2).  [Petitioner] did not object to the admissibility of Ms. Liggins's prior testimony.[4]  However, [Petitioner] did object to the Commonwealth having Ms. Liggins's written statement to police and the recording of her 911 call admitted into evidence.  The Commonwealth sought to use Ms. Liggins's written statement and 911 call as evidence that [Petitioner] possessed the gun that was later discovered on the neighbor's roof.

[4] A declarant is considered unavailable as a witness if the declarant refuses to testify about the subject matter despite a court order to do so.  Pa.R.E. 804(a)(2).  When the declarant is unavailable, the declarant's

prior testimony is admissible where it is offered against a party who had a "full and fair" opportunity to examine the witness. Pa.R.E. 804(b)(1) and comment thereto (citing *Commonwealth v. Bazemore*, 614 A.2d 684 (Pa. 1992)).

After consideration, the trial court concluded that the written statement could be used for impeachment purposes as a prior inconsistent statement and the 911 call was admitted as an excited utterance under Pa.R.E. 803(2).

Despite Ms. Liggins's refusal to testify at trial and recantation of her statement that [Petitioner] had pointed a gun at her, the record reveals that she did admit calling 911 on the night in question.  Additionally, Ms. Liggins testified previously that [Petitioner] had a gun, threatened to kill her, and that the gun the police retrieved was the gun that was kept at her house.  However, Ms. Liggins stated that the gun belonged to a former paramour, and she emphasized that the gun was not discovered inside her house.

On March 22, 2017, a jury found [Petitioner] guilty of persons not to possess firearms and acquitted him of the remaining charges.  On May 3, 2017, the trial court sentenced [Petitioner] to a term of four to eight years of incarceration.

*Commonwealth v. Wynn-Turner*, No. 1410 MDA 2017 (unpub. memo. at 1-5)

(record citations omitted).[1]

Petitioner filed a post-sentence motion on May 15, 2017.  (Doc. 8-1, p. 18.)[2]

Petitioner amended this motion on May 26, 2017.  (*Id.*, p. 19.)  The trial court

denied this motion on August 31, 2017.  (Doc. 8-1, p. 19.)

---

[1] The court notes that on direct appeal, the Superior Court found that Ms. Liggins' prior written statement was introduced for impeachment and substantive purposes.  (Doc. 8-1, pp. 432–33.)

[2] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

On September 11, 2017, Petitioner filed an appeal with the Superior Court. (Doc. 8-1, p. 19.)  He filed his statement of matters complained of on appeal on September 21, 2017, listing fifteen issues.  (Doc. 8-1, pp. 19, 383–85.)  On November 1, 2023, the trial court entered its 1925(a) opinion for Petitioner's direct appeal.  (*Id*., pp. 387–91.)

Petitioner filed his brief on direct appeal on December 22, 2017.  (*Id*., pp. 395, 397–419.)  He raised eight challenges: (1) The verdict rendered was impermissibly inconsistent; (2) The evidence presented at trial was contradictory; (3) Appellant's conviction was a violation of due process since it was based solely on inconsistent statements of an unreliable witness; (4) The trial court abused its discretion in denying Appellant's motion for a new trial on the grounds that the verdict was against the weight of the evidence; (5) The trial court abused its discretion when it admitted an inconsistent written statement of an unavailable witness as substantive evidence; (6) Appellant's right to confront and cross-examine adverse witnesses was violated by the admission of the inconsistent written statement of an unavailable witness; (7) The trial court abused its discretion when it admitted an excited utterance into evidence without the proper foundation being laid; and (8) Appellant's right to confront and cross-examine an adverse witness was violated by the admission of the telephone call alleged to be an excited

utterance.  (*Id*. 399–400.)  On May 1, 2018, the Superior Court affirmed the trial

court's judgment of sentence entered on May 3, 2017.  (*Id*., pp. 420–38.)

On May 25, 2018, Petitioner filed a petition for allowance of appeal before

the Pennsylvania Supreme Court.  (*Id*., p. 444.)  On November 7, 2018, Petitioner

filed a request to withdraw the petition.  (*Id*.)  On November 9, 2018, a notice of

disposition sheet was sent to the York County Court of Common Pleas.  (*Id*., pp.

444–45.)

Petitioner filed a PCRA petition in the York County Court of Common Pleas

in November of 2018.  (*Id*., p. 23.)  The PCRA petition raised multiple claims of

ineffective assistance of trial counsel, including the following: (1) for failing to

request a limiting jury instruction as to Ms. Liggins' prior written statement to

police; (2) for failing to seek admission of the May 2016 affidavit of Ms. Liggins;

(3) for failing to object to the Commonwealth impeaching an unavailable witness;

(4) for failing to object to hearsay within hearsay; (5) for failing to object to

specific portions of Commonwealth Exhibit Number 3; (6) for failing to object to

the prosecutorial misconduct during the Commonwealth's opening statement and

closing arguments to the jury; (7) for not requesting the Commonwealth to lay a

proper foundation for the admission of hearsay evidence; and (8) for failing to

object or request a reduction of the portion of the 911 call played at the criminal

trial.  (*Id*., pp. 448–54.)  Additionally, Petitioner raised the issue of his request for

the recusal of the trial judge.  (*Id*., p. 454.)  On February 10, 2020, the PRCA court

entered a notice pursuant to Pennsylvania Rule of Criminal Procedure 907 stating

that the issues raised were without merit.  (*Id*., pp. 447–55.)  On March 24, 2020,

the York County Court of Common Pleas entered an order denying the PCRA

petition.  (*Id*., pp. 456–58.)

On March 1, 2020, Petitioner filed a notice of appeal.  (*Id*., p. 516.)  On

April 21, 2020, Petitioner filed his concise statement of matters complaint of on

appeal pursuant to Pa.R.A.P. 1925(b).  (*Id*., pp. 459–60.)  Petitioner raised five

ineffective assistance of counsel issues: (1) for failing to request jury instructions

to limit the use of Ms. Liggins' prior written statement to police; (2) for failing to

object to the hearsay; (3) for failing to seek admission of the May 2016 affidavit of

Ms. Liggins; (4) for allowing the prosecution to improperly argue to the jury

during opening statements and closing arguments that they should consider

hearsay; and (5) for not requesting a reduction of a racial slur contained in the 911

call transcript.  (*Id*., p. 459.)  Additionally, Petitioner raised the argument that the

cumulative impact of the ineffective assistance of counsel issue resulted in such

prejudice to his right to a fair trial that a new trial is required and that the trial court

judge was not fair, impartial, or disinterested.  (*Id*., pp. 459–60.)  On April 30,

2020, the trial court responded with its 1925(a) statement.  (*Id*., pp. 462–65.)  On

November 17, 2020, the Superior Court of Pennsylvania affirmed the PCRA

court's decision.  (*Id.*, pp. 469, 532–49.)  It does not appear that Petitioner

appealed this decision.  (*Id.*, p. 469.)

Petitioner filed the instant petition for writ of habeas corpus pursuant to §

2254 on November 12, 2021.  (Doc. 1.)  The petition raises seven grounds for the

court's consideration: (1) that trial counsel provided ineffective assistance of

counsel by failing to request Pennsylvania Suggested Standard Jury Instruction §

4.08A(2) be used to limit the scope of Ms. Liggins' prior written statement to

police; (2) that the state courts inconsistently considered Ms. Liggins' prior written

statement to police; (3) that trial counsel provided ineffective assistance by failing

to object to inadmissible hearsay evidence; (4) that trial counsel provided

ineffective assistance by failing to utilize admissible exculpatory evidence; (5) that

the cumulative impact of each of the individual claims of ineffective assistance of

counsel should be considered collectively resulting in prejudice; (6) that the

evidence presented at trial was so lacking that the jury's verdict was the product of

surmise and conjecture; and (7) that his conviction violates due process because

the inconsistent statements of the unavailable witness failed to establish guilt

beyond a reasonable doubt.  (Doc. 1, pp. 6–20.)

On November 17, 2021, the court entered an order directing Petitioner to

pay the filing fee or file an application to proceed *in forma pauperis*.  (Doc. 3.)

Petitioner paid the required filing fee on December 7, 2021.  (Doc. 4.)  Petitioner

did not return the notice of election the court forwarded on February 15, 2022, so the court proceeded with reviewing the § 2254 petition.  (Docs. 6, 7.)  The court entered an order serving Respondents a copy of the petition on March 7, 2022. (Doc. 7.)  Respondents filed a response to the petition on April 14, 2022.  (Doc. 8.) Petitioner did not file a reply.

A review of the Pennsylvania Department of Corrections online inmate/parolee locator at https://inmatelocator.cor.pa.gov/#/ showed that Petitioner was released from incarceration and placed on parole on January 3, 2022. According to the website, Petitioner is still on parole.

## VENUE

Under 28 U.S.C. § 2241(d), a petition for a writ of habeas corpus under Section 2254 can be filed in either the district where the petitioner is in custody, or in the district where the petitioner was convicted and sentenced.  28 U.S.C. § 2241(d).  Petitioner was convicted and sentenced in York County, Pennsylvania, which is located in this district.  *See* 28 U.S.C. § 118(b).  Therefore, venue in this district is proper.

## STANDARD OF REVIEW

Habeas corpus is an "'extraordinary remedy' reserved for defendants who were 'grievously wronged' by the criminal proceedings."  *See Dunn v. Colleran*, 247 F.3d 450, 468 (3d Cir. 2001) (quoting *Calderon v. Coleman*, 525 U.S. 414,

146 (1998)).  The exercise of restraint by a federal court in reviewing and granting habeas relief in state court criminal prosecutions is appropriate due to considerations of comity and federalism.  *See Engle v. Isaac*, 456 U.S. 107 (1982).  "The States possess primary authority for defining and enforcing the criminal law.  In criminal trials they also hold the initial responsibility for vindicating constitutional rights.  Federal intrusions into state criminal trials frustrate both the States' sovereign power and their good-faith attempts to honor constitutional law."  *Id.*  States also have a recognized interest in the finality of convictions that have survived direct review within the state court system.  *See Brecht v. Abrahamson*, 507 U.S. 619, 620 (1993).

A district court may entertain an application for a writ of habeas corpus filed by a person in state custody "only on the ground that he is in custody in violation of the Constitution or laws of the United States."  28 U.S.C. § 2254(a).  If a claim presented in a § 2254 petition has been adjudicated on the merits in state court proceedings, habeas relief cannot be granted unless:

> the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* § 2254(d).

## Discussion

### A. Petitioner's Release Does Not Render His Petition Moot.

Initially, the court will address Petitioner's release from incarceration and the effect it potentially has on the pending Section 2254 petition.

"[A] petition for habeas corpus relief generally becomes moot when a prisoner is released from custody before the court has addressed the merits of the petition." *DeFoy v. McCullough*, 393 F.3d 439, 441 (3d Cir. 2005) (citing *Lane v. Williams*, 455 U.S. 624, 631 (1982)). "This general principle derives from the case or controversy requirement of Article III of the Constitution, which 'subsists through all stages of federal judicial proceedings, trial and appellate . . . the parties must continue to have a personal stake in the outcome of the lawsuit.'" *Id.* (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477–78 (1990)) (omission in original).

Here, Petitioner was released from incarceration on January 3, 2022. However, based on the inmate locator information, he continues to be on parole. Therefore, he continues to be "in custody." The "jurisdictional 'custody' requirement can be satisfied by restrictions other than physical confinement." *Piasecki v. Court of Common Pleas, Bucks County, PA*, 917 F.3d 161, 168 (3d Cir. 2019). "[F]or the purposes of habeas jurisdiction, a petitioner is 'in custody' if he or she files while subject to significant restraints on liberty that are not otherwise

10

experienced by the general public." *Id*. at 165.  A parolee is considered to be "in custody" for the purposes of seeking habeas relief.  *Jones v. Cunningham*, 371 U.S. 236 (1963).  Therefore, despite Petitioner's release from incarceration, he is still "in custody," and his petition is not moot.  Therefore, the court will address the merits of the petition.

**B. The State Court's Denial of Petitioner's Ineffective Assistance of Counsel Claims are Reasonable Under *Strickland*.**

In the pending petition, Petitioner alleges that trial counsel provided ineffective assistance by failing to request a specific jury instruction, failing to object to inadmissible hearsay, and failing to utilize admissible exculpatory evidence.  (Doc. 1.)  Furthermore, Petitioner alleges that the cumulative effect of these three errors on the part of counsel caused him to suffer prejudice.  (*Id*.)

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defence." U.S. Const. amend VI.  The purpose of the right to the assistance of counsel is to ensure a fair trial, and "the Court has recognized that 'the right to counsel is the right to the effective assistance of counsel.'"  *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  *Id.*  "The Sixth

11

Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003).  The clearly established federal law as to an ineffective-assistance-of-counsel claim is *Strickland*, which sets forth the following two-prong analysis.

Under the first prong of *Strickland*, the petitioner must establish that counsel's performance was deficient.  466 U.S. at 687.  "*Strickland's* first prong sets a high bar." *Buck v. Davis*, 137 S. Ct. 759, 775 (2017).  To establish that counsel's performance was deficient, the petitioner must establish that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688.  "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689.  As such, the court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance," *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 689), and "[t]o overcome that presumption, a defendant must show that counsel failed to act 'reasonabl[y] considering all the circumstances[.]'" *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quoting *Strickland*, 466 U.S. at 688).  "The challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" *Harrington*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 687).

Under the second prong of *Strickland*, the petitioner must establish prejudice. *Strickland*, 466 U.S. at 687. To do so, the petitioner must show a reasonable probability that, if not for counsel's errors, the result of the proceeding would have been different. *Id.* at 694. The petitioner "need not prove that the evidence would have been insufficient if not for counsel's errors . . . [or] 'that counsel's deficient conduct more likely than not altered the outcome.'" *Saranchak v. Sec'y, Pa. Dep't of Corr.*, 802 F.3d 579, 588 (3d Cir. 2015) (quoting *Strickland*, 466 U.S. at 693). Rather, the issue is whether there is a reasonable probability of a different result. *Id.* "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "That requires a 'substantial,' not just 'conceivable,' likelihood of a different result." *Pinholster*, 563 U.S. at 189 (quoting *Harrington*, 562 U.S. at 112).

To prevail on an ineffective-assistance claim, a petitioner must satisfy both prongs of *Strickland.* A court can choose which prong of the standard to apply first, and it may reject an ineffectiveness claim on the ground that the petitioner was not prejudiced without addressing whether counsel's performance was deficient. *Strickland*, 466 U.S. at 697.

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Even under *de novo* review, the standard for judging counsel's representation is a most deferential one." *Premo v. Moore*, 562

U.S. 115, 122 (2011).  And "[e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Harrington*, 562 U.S. at 105.  When the state court has decided the claim on the merits, "[t]he question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'"  *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).  "And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Id.*

In addressing Petitioner's specific claims of ineffective assistance of counsel, the Superior Court applied the governing test for ineffective assistance of counsel claims announced by the Pennsylvania Supreme Court in *Commonwealth v. Pierce*, 537 Pa. 514, 524 (1994), but the Superior Court cited to *Com. v. Johnson*, 635 Pa. 655, 690–91 (Pa. 2016).  (Doc. 8-1, p. 538.) ("Where, as here, a petitioner's claims raise allegations of prior counsel's ineffectiveness, 'the petitioner must demonstrate: (1) the underlying claim is of arguable merit; (2) that no reasonable basis existed for counsel's actions or failure to act; and (3) that the petitioner suffered judice as a result of counsel's error.'").  The United States Court of Appeals for the Third Circuit has determined that the *Pierce* test conforms to

established federal law and is "not contrary to the *Strickland* test." *Henderson v.*

*DiGuglielmo*, 138 F. App'x 463, 469 (3d Cir. 2005) (citing *Werts v. Vaughn*, 228

F.3d 178, 203–04 (3d Cir. 2000)) (recognizing the *Pierce* test as materially

identical to the *Strickland* test). Therefore, the Superior Court's applied test is not

"contrary to" the test established in *Strickland.*

Nor does the Superior Court's analysis constitute an objectively

unreasonable application of federal law. *See Knowles*, 556 U.S. at 123. As

discussed in detail below, each of the four challenges were addressed by the

Superior Court, and the Superior Court's determinations were not unreasonable

under the *Strickland* standard. Therefore, the court will dismiss the petition on all

four ineffective assistance of counsel grounds.

### 1. Pennsylvania Standard Criminal Jury Instruction 4.08A(2)

Petitioner asserts that trial counsel was ineffective for failing to request that

the trial court use Pennsylvania Standard Criminal Jury Instruction 4.08A(2) to

limit the jury's consideration of Ms. Liggins' prior inconsistent statement to police

for impeachment purposes only. *See* Pa. SSJI (Crim) § 4.08(2) [Second Alterative]

("You may consider this evidence for one purpose only, to help you judge the

credibility and weight of the testimony given by the witness at this trial. You may

not regard evidence of an earlier inconsistent statement as proof of the truth of

anything said in that statement.").

The Superior Court found that Ms. Liggins' written statement to the police was admissible as both impeachment and substantive evidence. (Doc. 81-1, pp. 540–41.) Therefore, it concluded that any attempt by trial counsel to introduce jury instructions limiting the evidence for solely impeachment purposes was without merit. (*Id*, p. 541.) Under the *Pierce* standard used by the state court, this addresses the first prong, that the underling claim was without merit. In other words, the Superior Court concluded that counsel cannot be ineffective for failing to make a request for a jury instruction that would not have succeeded. Under the *Strickland* standard, a determination that a claim is without merit fails to meet the first prong, that counsel's representation fell below an objective standard of reasonableness, and the second prong, that there is a reasonable probability that, if not for counsel's errors, the result of the proceeding would have been different. If a request for a specific jury instruction would not have succeeded, then counsel's action did not fall below an objective standard of reasonableness. Additionally, Petitioner cannot be prejudiced by counsel's failure to request a jury instruction when that request would have been denied. Therefore, the court finds the Superior Court's determination that the claim lacked merit is not unreasonable under *Strickland*.

16

### 2.  Inadmissible Hearsay

Next, Petitioner alleges that trial counsel was ineffective for failing to object to inadmissible hearsay evidence.  (Doc. 1, p. 11.)  Petitioner argues that Ms. Liggins' prior inconsistent statement to police that was read into the record at the habeas corpus hearing should not have been considered by the jury pursuant to Pennsylvania Rule of Evidence 805.  (*Id.*)

Ms. Liggins completed a handwritten statement to police on the night of April 27, 2015, stating that Petitioner had a gun in his hand when he threatened her.  (Doc. 8-1, pp. 117, 262–63.)  Ms. Liggins recanted this statement with a written affidavit on May 22, 2016.  (*Id*., pp. 117–18.)  Ms. Liggins testified at Petitioner's preliminary hearing and habeas corpus hearing that Petitioner did not have a gun.  (*Id*., pp. 238–67.)  At the habeas corpus hearing, the Commonwealth confronted Ms. Liggins with her prior written statement to police.  That prior written statement was read into the record.  (*Id*., pp. 262–63.)  At the criminal trial, Petitioner's trial attorney objected to the written statement to police being entered into evidence because Ms. Liggins' refusal to testify resulted in Petitioner not being able to cross examine her, and the trial court agreed and excluded the prior written statement.  (*Id*., pp. 119–28.)  However, the text of the prior written statement to police was read into the record in a habeas corpus hearing, and the transcript of that habeas corpus hearing was read at the criminal trial.  (*Id*., pp.

119–28, 238–67.)  Petitioner's trial counsel referred to this as allowing the prior

written statement in through the "backdoor" and objected.  (*Id*., pp. 119–28.)  The

trial court overruled her objections and let the transcripts of past proceedings be

read into the record at the criminal trial because Ms. Liggins was subject to cross

examination during the habeas corpus proceedings.  (*Id*.)

The Superior Court found that Petitioner's argument regarding trial

counsel's failure to object to the introduction of the transcripts from prior hearings

failed all three prongs of the *Pierce* test for ineffective assistance of counsel, and

provided the following rationale:

> The Commonwealth's reference to Liggins's prior written statement
> was permissible at the preliminary hearing for the same reasons it was
> permissible at the *habeas* hearing: the prior inconsistent statement was
> given under reliable circumstances and Liggins was available for cross-
> examination.  *See Wynn-Turner*, 1410 MDA 2017 (unpub. memo. at
> 13).  Thus, counsel had no basis to object to this testimony from the
> preliminary hearing transcript.   Moreover, [Petitioner] cannot
> demonstrate he was prejudiced by the reference to Liggins's prior
> statement in the preliminary hearing transcript since Liggins read her
> entire statement into the record at the *habeas* hearing, and, as we
> determined *supra*, that transcript was properly read into the record at
> trial.  Therefore, [Petitioner]'s second claim fails.  *See Johnson*, 139
> A.3d at 1272.

(Doc. 8-1, p. 543.)

This court finds that the Super Court's rationale is not unreasonable under

*Strickland*.  Essentially, the trial court found that this challenge was meritless:

"counsel had no basis to object to this testimony from the preliminary hearing

transcript." (*Id*.)  This is buttressed by the fact that trial counsel actually did object to the introduction of the prior written statement to police as evidence through the use of prior proceeding transcripts.  Counsel specifically asked that this portion of the transcript be redacted and even referred to this as a "backdoor" allowing the inadmissible evidence into trial.  (*Id*., pp. 127–28.)  Therefore, this portion of the petition will be dismissed.

### 3.  Exculpatory Evidence

Third, Petitioner asserts that trial counsel was ineffective for not introducing Ms. Liggins' May 2016 affidavit recanting her April 2015 written statement to police.  (Doc. 1., p. 13.)  The trial court originally found the affidavit to be hearsay that was not subject to an exception.  (Doc. 8-1, pp. 119–28.)  The Superior Court did not address whether the May 2016 statement was admissible because Petitioner could not demonstrate that he was prejudiced.  (*Id*., p. 545.)  The Superior Court determined that Ms. Liggins' statements that Petitioner did not have a gun in his possession were introduced through the reading of the transcripts from the prior proceedings rendered the May 2016 statement was superfluous.  (*Id*.)

The Superior Court's determination is not unreasonable under *Strickland*. Without addressing the reasonableness of counsel's actions or inactions, the court will address only the issue of prejudice.  *See Strickland*, 466 U.S. at 697.  Here, the June 29, 2015 preliminary hearing transcript and the February 29, 2016 habeas

corpus hearing transcript were read into evidence the criminal trial.  (Doc. 8-1, pp.

237–67.)  At both hearings, Ms. Liggins testified that Petitioner did not have

possession of the gun on April 27, 2015.  (*Id.*)  Therefore, the May 2016 affidavit

recanting the April 2015 written statement to the police is duplicative, and

Petitioner did not suffer any prejudice when it was excluded from the criminal

trial.  This portion of the petition will be dismissed.

### 4.  Cumulative Effect

Fourth, Petitioner alleges that the cumulative effect of trial counsel's

ineffective assistance results in prejudice.  (Doc. 1, pp. 14, 15.)

"The cumulative error doctrine allows a petitioner to present a standalone

claim asserting the cumulative effect of errors at trial that so undermined the

verdict as to constitute a denial of his constitutional right to due process."  *Collins*

*v. Sec'y of Pennsylvania Dep't of Corr.*, 742 F.3d 528, 542 (3d Cir. 2014).  To

establish that cumulative errors were not harmless, a defendant must show that

they had a "substantial and injurious effect or influence in determining" the

verdict.  *Albrecht v. Horn*, 485 F.3d 103, 139 (3d Cir. 2007) (citation omitted).

This quantum of prejudice is essentially the same as the *Strickland* prejudice

standard.  *Id.* (citing *Whitney v. Horn*, 280 F.3d 240, 258–59 & n.18 (3d Cir.

2002)).

The foregoing analysis regarding Petitioner's ineffective assistance of counsel claims reveals that only one of those claims was denied based on lack of prejudice – the exculpatory evidence claim.  *See supra*.  The court again notes that the Superior court did not address whether or not trial counsel erred in not submitting the May 2016 affidavit into evidence, but only found that there was no prejudice to Petitioner.  As concluded above, this is a reasonable analysis under *Strickland*.  For the sake of argument, the only ineffective assistance of counsel claim that could potentially be viewed as an error on the part of trial counsel is the exculpatory evidence claim.  Both case law and logic dictate that if there is only one attorney error, which itself was found to have no prejudicial effect, there cannot possibly be an aggregation of errors to establish a cumulative error claim. *See United States v. House*, 684 F.3d 1173, 1210–11 (11th Cir. 2012) ("[W]here there is no error or only a single error, there can be no cumulative error[.]" (citation omitted)); *Hanson v. Sherrod*, 797 F.3d 810, 852 (10th Cir. 2015) ("We cumulate error only upon a showing of at least two actual errors." (citation omitted)); *Ragan v. Horn*, No. 2:00-cv-2092, 2016 WL 1241771, at *10 (E.D. Pa. Mar. 29, 2016) ("The cumulative error doctrine requires the existence of 'errors' to aggregate. Absent such errors . . ., the cumulative error doctrine does not apply." (citation and internal quotation marks omitted)).  As the court has found no error by trial

counsel, and only a single error was assumed for the sake of argument, it follows

that Petitioner's cumulative error claim will be dismissed.

### C. The Superior Court Properly Addressed Petitioner's Sufficiency of the Evidence Challenge.

Petitioner appears to challenge the sufficiency of the evidence: "[t]he

evidence presented at Trial is so lacking that the jury's verdict is the product of

surmise and conjecture." (Doc. 1, p. 17.)  He then lists supporting facts addressing

four of the Commonwealth's exhibits that include Ms. Liggins' statements.  (*Id*.,

pp. 17–18.)  Petitioner then asserts a due process challenge: "Petitioner[']s

conviction is a violation of Due Process because the inconsistent statements of the

unavailable witness failed to establish beyond a reasonable doubt that Petitioner

possessed a firearm on April 27, 2015." (*Id*., p. 19.)  In support, Petitioner adopts

and incorporates the supporting facts of his sufficiency challenge.  (*Id*.)

While Petitioner asserts these as two distinct arguments, the court will

address them as one.  "[T]he Due Process Clause forbids any conviction based on

evidence insufficient to persuade a rational factfinder of guilt beyond a reasonable

doubt." *Tibbs v. Florida*, 457 U.S. 31, 45 (1982) (citing *Jackson v. Virginia*, 443

U.S. 307 (1979)

The sufficiency claim and the due process claim were raised on his direct

appeal.  (Doc. 8-1, pp. 383–85.)  While Petitioner appealed them to the Superior

Court, Petitioner's briefing was so inadequate it was questionable whether or not

he properly raised them before the Superior Court:

> In his first and second issues, Appellant argues that the jury's verdict
> was improper, as it was inconsistent with the evidence.  Appellant's
> Brief at 11-18.  Appellant points out that a guilty verdict cannot stand
> when the Commonwealth's evidence is so lacking that the jury's verdict
> is the product of surmise and conjecture.  Appellant's Brief at 17-18
> (citing *Commonwealth v. Farquharson*, 354 A. 2d 545 (Pa. 1976), and
> *Commonwealth v. Karkaria*, 625 A. 2d 1167, 1170 (Pa. 1993)).
> However, after reviewing Appellant's Brief, it is difficult to discern
> from paragraph to paragraph whether Appellant is challenging the
> weight of the evidence, the sufficiency of the evidence, or is simply
> unhappy with the result of the trial.

(Doc. 8-1, p. 426.)  The Superior Court then addressed the issue of sufficiency as

best it could:

> Insofar as Appellant is challenging the sufficiency of the evidence, we
> review such claims under the following standard:
>
> > Our standard when reviewing the sufficiency of the
> > evidence is whether the evidence at trial, and all
> > reasonable inferences derived therefrom, when viewed in
> > the light most favorable to the Commonwealth as verdict-
> > winner, are sufficient to establish all elements of the
> > offense beyond a reasonable doubt.  We may not weigh
> > the evidence or substitute our judgment for that of the fact-
> > finder.   Additionally, the evidence at trial need not
> > preclude every possibility of innocence, and the fact-
> > finder is free to resolve any doubts regarding a defendant's
> > guilt unless the evidence is so weak and inconclusive that
> > as a matter of law no probability of fact may be drawn
> > from the combined circumstances.  When evaluating the
> > credibility and weight of the evidence, the fact- finder is
> > free to believe all, part or none of the evidence. For
> > purposes of our review under these principles, we must

> review the entire record and consider all of the evidence
> introduced.
>
> *Commonwealth v. Trinidad*, 96 A. 3d 1031, 1038 (Pa. Super. 2014) citation
> omitted).

(*Id.*, p. 428.)  This standard is consistent with the federal standard: evidence is

sufficient to support a conviction if, "after reviewing the evidence in the light most

favorable to the prosecution, any rational trier of fact could have found the

essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at

319; *see Evans v. Court of Common Pleas, Delaware Cnty.*, 959 F.2d 1227, 1233

(3d Cir. 1992) (noting that the test for sufficiency of the evidence is the same under

both Pennsylvania and federal law).

The Superior Court then acknowledged that Petitioner only challenged the

element of possession, and found that the evidence was sufficient to establish the

Petitioner constructively possessed the firearm:

> When viewed in the light most favorable to Commonwealth, the
> evidence presented at trial established that Appellant entered the home,
> brandished a firearm, and proceeded to the third floor of the home, but
> when police arrived, Appellant no longer possessed the firearm.
> Officer Paul Thorne testified that he suspected Appellant threw it out
> of a window on the third floor.  N.T. 3/20/17, at 97.  When the officer
> looked out of a window on the third floor, he saw a lunch box on the
> roof of a neighboring house.  *Id.* at 98.  The firearm was discovered in
> a lunch box belonging to Ms. Liggins's son.  Moreover, a DNA expert
> testified that the evidence showed that the DNA mixture from a swab
> of the firearm revealed that it was 70,740 times more likely that the
> DNA on the firearm originated from Appellant and two unknown
> individuals. N.T., Trial, 3/21/17, at 18. Viewed together, it was
> reasonable for the jury to conclude that Appellant possessed the firearm

and subsequently placed the gun in the lunch box and threw it out of the window on to the neighbor's roof.  We conclude that the evidence was sufficient to establish that Appellant constructively possessed the firearm.

(Doc. 8-1, pp. 429–30.)  Because the Superior Court applied the correct legal standard, its adjudication satisfies review under the "contrary to" clause of § 2254(d)(1).

This court next considers whether the trial court's decision amounted to an "unreasonable application" of *Jackson*.  The Supreme Court has further addressed the standard set forth in *Jackson*:

> *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference.  First, on direct appeal, "it is the responsibility of the jury. . . to decide what conclusions should be drawn from evidence admitted at trial.  A reviewing court may set aside the [trial court's] verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the [trial court]." *Cavazos v. Smith*, 565 U.S. 1 (2011).  And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court.  The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid.*  (quoting *Renico v. Lett*, 559 U.S. 766 (2010)).

> - - -

> [T]he only question under *Jackson* is whether [the state court's] finding was so insupportable as to fall below the threshold of bare rationality.  The state court of last review did not think so, and that determination in turn is entitled to considerable deference under AEDPA, 28 U.S.C. § 2254(d).

*Coleman v. Johnson*, 566 U.S. 650, 651–56 (2012).

Here, Petitioner asserts that Ms. Liggins' various statements were not sufficient to support the verdict. (Doc. 1, pp. 17–19.) However, the trial court considered all the evidence presented at trial, including the testimony of other witnesses and DNA test results. (Doc. 8-1, pp. 429–30.) Therefore, the court finds that the state court reasonably applied the standard in *Jackson*.

### D. Petitioner's Remaining Challenge is Unexhausted and Will Be Dismissed.

Petitioner's remaining allegation, inconsistent findings by the state courts, is unexhausted and will be dismissed.

Under § 2254(c), a petitioner will not be deemed to have exhausted his available state remedies if he had the right under the law of the state to raise, by any available procedure, the question presented. *See O'Sullivan v. Boerckel*, 526 U.S. 838, (1999). A petitioner may exhaust a federal claim either by raising it on direct appeal or presenting it in post-conviction PCRA proceedings. *See id.* at 845. In addition, a claim is exhausted when it has been "fairly presented" to the state court. *See Picard v. Connor*, 404 U.S. 270, 275 (1971). To that end, the federal habeas claim "must be the substantial equivalent of that presented to the state courts." *See Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997). The petition must do so "in a manner that puts [the respondents] on notice that a federal claim is being asserted." *See Bronshtein v. Horn*, 404 F.3d 700, 725 (3d Cir. 2005). "The Supreme Court has instructed that a claim is not 'fairly presented' if the state court

26

'must read beyond a petition or brief . . . in order to find material' that indicates the presence of a federal claim." *Collins*, 742 F.3d at 542 (quoting *Baldwin v. Reese*, 541 U.S. 27, 32 (2004)).  Moreover, a habeas corpus petitioner has the burden of proving the exhaustion of all available state remedies.  *See* 28 U.S.C. § 2254. Overall, the exhaustion requirement advances the goals of comity and federalism, while reducing "piecemeal litigation."  *See Duncan v. Walker*, 533 U.S. 167, 180 (2001).

Here, Petitioner's argument that the state court made inconsistent findings regarding the submission of Ms. Liggins' prior written statement to police, is raised initially before this court.  Petitioner asserts that the Superior Court created this issue in its November 17, 2020 decision.  (Doc. 1, p. 10.)  However, Petitioner did not appeal this decision to the Pennsylvania Supreme Court.  Therefore, he did not exhaust all of the available state remedies as to this issue.  The court will dismiss this portion of the petition as unexhausted.

### E. A Certificate of Appealability Will Not Be Issued.

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254.  A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of

reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. at 327. "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Here, jurists of reason would not find the procedural disposition of this case debatable. Accordingly, no COA will be issued.

## CONCLUSION

For the reasons set forth above, the court will dismiss the petition for writ of habeas corpus.

A separate order will be issued.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: December 4, 2023